Argued and submitted June 21, 1995, reversed and remanded February 21, 1996

## AETNA CASUALTY & SURETY COMPANY,
*Petitioner,*

*v.*

## SUE A. BLANTON, D.C.,
*Respondent.*

### (94-027; CA A85910)

911 P2d 363

Vera Langer argued the cause for petitioner. On the brief were Allen W. Lyons and Scheminske & Lyons.

Sue A. Blanton, D.C, waived appearance for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

In this medical services dispute, insurer seeks review of a final order of the director of the Department of Consumer and Business Services requiring reimbursement for chiropractic treatment provided to a workers' compensation claimant. The issue is whether the director lawfully may order reimbursement of chiropractic treatment when the treatment was provided without a written treatment plan approved and signed by the injured worker's treating physician. The director held that, although the applicable administrative rule provides that reimbursement shall not be required in the absence of an approved, written treatment plan, strict compliance is not necessary if the treatment is reasonable. Reviewing for errors of law, ORS 656.327; ORS 183.482(7), we disagree with the director's reading of the rule and reverse.

ORS 656.327(1)(a) provides, in part, that, if an insurer believes that an injured worker is receiving medical treatment that is "in violation of rules regarding the performance of medical services," the insurer may seek review by the director.[1] Among the rules that have been promulgated regarding the reimbursement of medical services is OAR 436-10-040, which provides, in part:

"(1)(a) Medical services, including diagnostic services, provided to the injured worker shall not be more than the nature of the compensable injury or the process of recovery requires. *Services which are unnecessary or inappropriate according to accepted professional standards, or to these rules, * * * are not reimbursable*[.]

"* * * * *

"(3)(a) Ancillary services including, but not limited to, physical therapy or occupational therapy *by a medical service provider other than the attending physician shall not be reimbursed unless carried out under a written treatment plan prescribed prior to the commencement of treatment and signed by the attending physician within 7 days of the beginning of treatment.* The treatment plan shall include objectives, modalities, frequency of treatment and duration. A

---

[1] The legislature amended ORS 656.327(1)(a) effective June 7, 1995. Or Laws 1995, ch 332, § 41. That amendment does not affect the disposition of this case. *See former* ORS 656.327(1)(a).

copy of the signed treatment plan *shall be* provided to the insurer by the attending physician within 14 days of the beginning of treatment. * * *

"(b)   Medical services prescribed by an attending physician and provided by a chiropractor, * * * *shall be subject to the treatment plan requirements set forth in subsection (3)(a) of this rule*[.]"

(Emphasis supplied.)

In this case, claimant sustained a compensable injury on November 12, 1993. Claimant's chiropractor, Dr. Blanton, was claimant's attending physician at the time of the injury. A month later, however, an internist, Dr. Beers, became claimant's attending physician. Beers verbally approved the chiropractor's continued treatment of claimant, and, on January 4, 1994, Blanton began treatments. On January 18, 1994, insurer notified Blanton that, because it had not received a referral and a written treatment plan, the chiropractic treatments to that date would not be reimbursed. Blanton then obtained a referral from Beers and, on January 28, 1994, Blanton prepared a chiropractic treatment plan for Beers's approval. In the meantime, Blanton continued treatments. Beers ultimately signed the plan on February 28, 1994. Blanton then billed insurer for eight treatments from January 4 through March 4, 1994. Insurer disallowed reimbursement for treatments provided before February 28, because Beers had not signed the treatment plan at that point. Blanton requested review of insurer's disallowance.

The Medical Review Unit (MRU) affirmed insurer's denial of reimbursement. Blanton then requested review by the director. The director found that, although OAR 436-10-040(3)(a) permits reimbursement only if there is a prior written treatment plan approved by the treating physician, in this case, treatment is reimbursable, because the rule is merely a "guideline," because the treatment was "reasonable and necessary" and because

"Beers' failure to provide a treatment plan consistent with the Director's rules reflects upon the complexity of the system rather [than] the appropriateness of the care."

On review, insurer argues that there simply is no exception in the rules for good faith ignorance of the complexities of the workers' compensation system. To the contrary, insurer contends, the rule unequivocally states that reimbursement "shall not" be required without a *prior* written, approved treatment plan signed within seven days of the commencement of treatment. We agree.

■     We begin with a fundamental principle of administrative law that "[w]hen an agency has the authority to adopt rules and does so, it must follow them." *Albertson's, Inc. v. Bureau of Labor and Industries*, 128 Or App 97, 101, 874 P2d 1352 (1994). An agency does not have the authority to ignore its own rules. *Id.*; *Georgia-Pacific Corp. v. Kight*, 126 Or App 244, 246, 868 P2d 36 (1994); *Harsh Investment Corp. v. State Housing Division*, 88 Or App 151, 157, 744 P2d 588 (1987), *rev den* 305 Or 273 (1988).

■     OAR 436-10-040(1)(a) provides that medical services provided without complying with the requirements of the rule "are not reimbursable." OAR 436-10-040(3)(a) further provides that medical services "shall not be reimbursed unless carried out under a written treatment plan" approved by the treating physician within seven days of the first day of treatment. And OAR 436-10-040(3)(b) specifically provides that reimbursement for chiropractic treatment is "subject to the treatment plan requirements set forth in subsection (3)(a) of this rule." There is nothing equivocal about the foregoing rules. They contain no exceptions for reasonable and necessary treatment or for physicians who are unfamiliar with them. Nor can the rules reasonably be regarded as merely precatory. By their own terms, they are mandatory. They clearly provide that medical services "shall not be reimbursed" unless carried out in accordance with the rules.

We are not exalting form over substance. The rules themselves proclaim that

> "[t]he preparation of a written treatment plan and the supplying of progress notes are integral parts of the fee for the medical service."

OAR 436-10-040(3)(e). Moreover, despite the director's concerns, there is no trap for the unwary. The rules are clear and

straightforward. Although, as the director found, Beers may not have been familiar with them, he should have been. Moreover, there is no suggestion that Blanton was unfamiliar with the rules. Indeed, insurer notified Blanton as early as January 18, 1994, that treatments would not be reimbursed without a written treatment plan approved by the attending physician. Yet, Blanton continued to provide treatments without an approved, written plan.

The director erred in ordering reimbursement of chiropractic treatment.

Reversed and remanded.