Argued and submitted September 9, decision of Court of Appeals and order of
Workers' Compensation Board affirmed December 15, 2005

In the Matter of the Compensation of
Robert M. Morales, Claimant.

Robert M. MORALES,
*Petitioner on Review,*

*v.*

SAIF CORPORATION
and Bring Recycling,
*Respondents on Review.*

(WCB 02-07850; CA A122935; SC S52119)

124 P3d 1233

Christopher D. Moore, of Malagon, Moore & Jensen, Eugene, argued the cause and filed the brief for petitioner on review.

Jerome P. Larkin, SAIF Corporation, Salem, argued the cause and filed the brief for respondents on review.

DE MUNIZ, J.

## DE MUNIZ, J.

The issue in this workers' compensation case is whether ORS 656.325(5)(b) entitled claimant's former employer to cease paying benefits for temporary total disability and to begin paying benefits for temporary partial disability when claimant's attending physician approved work in a modified job that the former employer would have offered claimant if claimant had not been terminated for violating a work rule. We conclude that the statute authorized the payment changes at issue in this case and, therefore, affirm the order of the Workers' Compensation Board (board) and the decision of the Court of Appeals.

We take the procedural history and facts from the Court of Appeals opinion:

"In 1997, claimant suffered a shoulder injury at work, which employer accepted as nondisabling. Claimant returned to his job without time loss. In 1998, employer terminated claimant's employment for a violation of work rules. Claimant began working for a different employer, Foss Furniture Clinic (Foss). Meanwhile, in 2000, employer implemented a written policy to assist workers to return to work after an injury by offering modified work.

"In 2002, claimant's shoulder condition became worse and he was unable to continue working at Foss. He has not returned to work since that time. In July 2002, employer accepted an aggravation claim relating to the shoulder injury and reclassified the original claim as disabling. Employer began paying benefits for temporary total disability as of September 19, 2002. Claimant had surgery on his shoulder on September 23, 2002, and his attending physician released him for modified work on September 30, 2002. On October 9, 2002, the attending physician approved a modified job that employer would have offered to claimant as of October 14, 2002, had he remained employed. In response to the physician's release, employer ceased payment of temporary total disability as of October 14. The board upheld employer's termination of benefits [under ORS 656.325(5)(b) set out *post*], and claimant seeks judicial review. The only question on review is whether employer was authorized to cease paying temporary total disability benefits."

*Morales v. SAIF Corp.*, 196 Or App 693, 695, 103 P3d 654 (2004).

On appeal, claimant argued that (1) ORS 656.325(5)(b) does not apply to aggravation claims; (2) even if ORS 656.325(5)(b) were applicable, the statute's provisions had not been satisfied because claimant's termination had not occurred while his aggravation claim was pending; and (3) employer did not have a written return-to-work policy in effect at the time of that termination. The Court of Appeals, however, affirmed the board's termination of claimant's temporary total disability benefits. The Court of Appeals reasoned that, although claimant could not return to work for employer because employer had terminated him, employer nevertheless had satisfied the requirements of ORS 656.325(5)(b) by (1) creating a job modified to accommodate claimant's injury; (2) implementing a written policy of offering such modified work to injured workers; and (3) receiving approval from claimant's physician regarding claimant's ability to do that modified work. *Morales*, 196 Or App at 699.

We subsequently allowed claimant's petition for review to examine the legislature's intent in enacting ORS 656.325(5)(b). On review, claimant reasserts the arguments that he presented to the board and the Court of Appeals, which question the meaning and applicability of ORS 656.325(5)(b), which provides:

> "If the worker has been terminated for violation of work rules or other disciplinary reasons, the insurer or self-insured employer shall cease payments pursuant to ORS 656.210 and commence payments pursuant to ORS 656.212 when the attending physician or nurse practitioner authorized to provide medical services under ORS 656.245 approves employment in a modified job that would have been offered to the worker if the worker had remained employed, provided that the employer has a written policy of offering modified work to injured workers."

We begin our analysis with claimant's assertion that the Court of Appeals and the board "erroneously applied ORS 656.325(5)(b) to an accepted aggravation claim, denying [claimant] the protection of temporary disability benefits afforded by the workers' compensation statutes." Claimant

contends that an aggravation claim is not subject to ORS 656.325 because an aggravation claim is a separate and independent claim governed by ORS 656.273,[1] which does not refer to or incorporate ORS 656.325.

In support of that contention, claimant initially argues that this court's decision in *Buddenberg v. Southcoast Lumber*, 316 Or 180, 850 P2d 360 (1993), established that "ORS 656.325 does not apply to aggravation claims because they are new claims in their own right, independent of the prior adjudicated claim." Claimant's reliance on *Buddenberg* is misplaced.

In *Buddenberg*, this court held that "a claim for aggravation independently fits the definition of a 'claim,'" 316 Or at 183 n 1. However, the court also concluded that entitlement to benefits for an aggravation claim depends "on how the claimant's circumstances fit within the provisions of the Worker's Compensation Law governing that particular claim." *Id.* at 186. Here, the Court of Appeals in applying *Buddenberg*, reasoned that, "although an aggravation claim is a separate claim, the general provisions of the Workers' Compensation Law regarding the availability of and limitations on particular types of benefits apply to aggravation claims." *Morales*, 196 Or App at 700.

■ The Court of Appeals cited correctly this court's statement in *Buddenberg* in rejecting claimant's argument. However, in *Buddenberg* this court did not analyze ORS 656.325(5)(b) under the now-familiar methodology for construing statutes that this court summarized in *PGE v.*

---

[1] ORS 656.273(1)(a) and (b) provide:

"After the last award or arrangement of compensation, an injured worker is entitled to additional compensation for worsened conditions resulting from the original injury. A worsened condition resulting from the original injury is established by medical evidence of an actual worsening of the compensable condition supported by objective findings. However, if the major contributing cause of the worsened condition is an injury not occurring within the course and scope of employment, the worsening is not compensable. A worsened condition is not established by either or both of the following:

"(a) The worker's absence from work for any given amount of time as a result of the worker's condition from the original injury; or

"(b) Inpatient treatment of the worker at a hospital for the worker's condition from the original injury."

*Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). This case presents the opportunity to do so. Under that methodology, we first examine the text of the statute, in context, in an effort to discern the intent of the legislature. *Id.* at 610. If the meaning of the statute is clear at that level of analysis, then further inquiry is unnecessary. *Id.* at 611.

The text of ORS 656.325(5)(b) does not indicate explicitly whether its provisions are applicable or inapplicable to aggravation claims. However, the statute applies to "payments" made under ORS 656.210 and ORS 656.212, and does not specifically exclude payments for aggravations claims. If the legislature had intended to exempt aggravation claims from ORS 656.325(5)(b), it could have included an exclusionary preamble.[2] No such preamble exists, and in interpreting a statute, this court will not insert what the legislature has omitted. ORS 174.010. The legislature's omission of any exemptions demonstrates that the legislature intended the provisions of ORS 656.325(5)(b) to have plenary effect.

Furthermore, in determining the statute's applicability, we also must consider previous decisions of this court interpreting ORS 656.325(5). In *Cutright v. Weyerhaeuser Co.*, 299 Or 290, 702 P2d 403 (1985), the court determined that

"[a]s applied to aggravation claims, [*former* ORS 656.325(5) (1983)] dictates that a worker receiving [temporary total disability] benefits must not refuse wage earning employment prior to the aggravation claim determination if the worker is capable of working. Thus, a claimant who has retired from the labor market cannot qualify for [temporary total disability] benefits because of the claimant's decision to refuse further wage earning employment."

*Id.* at 300. In the 20 years following the *Cutright* decision, the legislature has not amended the text of ORS 656.325(5) to

---

[2] An example of such a preamble can be found in ORS 656.325(5)(a), which provides, in part:

"Except as provided by ORS 656.268(4)(c) and (10), an insurer * * * shall cease making payments pursuant to ORS 656.210 and shall commence making payment of such amounts as are due pursuant to ORS 656.212 when an injured worker refuses wage earning employment prior to claim determination * * *."

restrict its application to initial claims only or otherwise explicitly made the statute inapplicable to aggravation claims.[3] For the reasons described above, we conclude that the legislature intended that temporary total disability benefits deriving from an aggravation claim be subject to termination in the circumstances set forth in ORS 656.325(5)(b).

Claimant next argues that, even if ORS 656.325 applies to aggravation claims generally, the statute is "reasonably susceptible to more than one meaning." Claimant contends that the statute does not clearly indicate when its provisions are triggered. Claimant argues that ORS 656.325(5)(b) applies only if termination occurred *during* the aggravation claim *and* a written return-to-work policy was in effect *at the time* of that termination. As claimant interprets ORS 656.325(5)(b), employer failed to satisfy either of those requirements.

Claimant further argues that his claim is new and independent, separate from the initial claim, and that this court should analyze it based on present circumstances and not on events that preceded it. As claimant views it, his 1998 termination should have no bearing on whether he is entitled to benefits under the current aggravation claim, and he should not be "punished" for an event that occurred at a prior employment.

In essence, claimant relies on the underlying purpose of the Workers' Compensation Law, which is to "restore the injured worker physically and economically to a self-sufficient status in an expeditious manner and to the greatest extent practicable[.]" ORS 656.012(2)(c). Claimant argues that "interpreting ORS 656.325(5) to include workers * * * who have remained in the workforce and have worked successfully for later employers and then suffer an aggravation of their compensable condition, frustrates the Workers' Compensation Law's policies and punishes the employee for

---

[3] In 1995, the legislature amended ORS 656.325(5), renumbering that provision as ORS 656.325(5)(a) and adding two new paragraphs. In so doing, the legislature chose to incorporate the text of *former* ORS 656.325(5) (1983) as the entirety of subparagraph (5)(a). Therefore, the legislature demonstrated an intent to extend the circumstances in which an injured worker becomes entitled to temporary partial disability as opposed to temporary total disability to both paragraphs (5)(b) and (c).

an earlier alleged work rule violation." Claimant's policy argument is reasonable, and it parallels the stated purposes of the Workers' Compensation Act. Furthermore, claimant is correct that ORS 656.325(5)(b) applies "[i]f a worker has been terminated for violation of work rules or other disciplinary reasons" and does not state explicitly by whom the worker must have been terminated.

However, the text of ORS 656.325(5)(b) indicates only that it applies if the employer-at-injury terminated the claimant, and it does not address any subsequent employment. ORS 656.325(5)(b) provides that, *if* a worker has been terminated, and "the attending physician * * * approves employment in a modified job *that would have been offered to the worker if the worker had remained employed*," then the employer is permitted to cease payment of temporary total disability and commence payment of temporary partial disability. (Emphasis added.) The employer permitted to reduce payments under the statute is the employer-at-injury, and the hypothetical modified job is a job that would have been offered by the employer-at-injury had the claimant remained employed by the employer-at-injury. As we view it, the text allows for no other interpretation.

Claimant also argues that ORS 656.325(5)(b) applies only if the injured worker is receiving temporary total disability benefits *at the time of termination*. ORS 656.325(5) provides that "[t]he insurer or self-insured employer shall cease [temporary total disability] payments and commence [temporary partial disability] payments *when* the attending physician * * * approves employment in a modified job that would have been offered to the worker if the worker had remained employed." ORS 656.325(5) unambiguously conditions both the obligation to stop paying temporary total disability and the obligation to begin paying temporary partial disability on the attending physician's approval of employment in a modified job. The text of the statute does not support claimant's interpretation, because it requires only that the termination of employment precede the physician's approval of a modified job.

Finally, claimant contends that ORS 656.325(5)(b) requires the employer to have the written policy in place at

the time of termination, not merely at the time that the physician approves the modified job. We disagree. The statute refers to a hypothetical job, which *would have been offered* had the claimant not been terminated. Here, employer's policy was in effect both at the time that the aggravation of the injury occurred and at the time that the attending physician approved employment in a modified job. Under ORS 656.325(5)(b), the obligation to have a return-to-work policy is satisfied if the employer has that policy in place at the time the worker's attending physician approves a modified job.

Based on the foregoing, we conclude that employer satisfied the requirements under ORS 656.325(5)(b) and was authorized to cease paying temporary total disability benefits and commence reduced temporary partial disability benefits payments.

The decision of the Court of Appeals and the order of the Workers' Compensation Board are affirmed.